UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 2:16-CR-118 |
| v. | ) | |
| | ) | JUDGE GREER |
| KARI CARTER | ) | |

**PLEA AGREEMENT**

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, KARI CARTER and the defendant's attorney, have agreed upon the following:

1. The defendant will plead guilty to the following count in the indictment:

    a) <u>Count One</u>. Conspiring to manufacture, distribute, and possess with intent to distribute anabolic steroids, a Schedule III Controlled Substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(E).

    The punishment for this offense is as follows. A maximum of ten years imprisonment, a maximum fine of $500,000, a mandatory minimum two years and a maximum of lifetime on supervised release, and a $100 special assessment.

2. In consideration of the defendant's guilty plea, the United States agrees to move the Court at the time of sentencing to dismiss the remaining counts against the defendant in this indictment.

3. The defendant has read the indictment, discussed the charges and possible defenses with defense counsel, and understands the crimes charged.

4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

a. Through the testimony of several witnesses, the United States would demonstrate beyond a reasonable doubt, that beginning on or about January 1, 2012 through on or about September 30, 2015, in the Eastern District of Tennessee and elsewhere, the defendant did knowingly, intentionally, and without authority, combine, conspire, confederate, and agree with at least one other person to manufacture, distribute, and possess with intent to distribute, anabolic steroids, a Schedule III controlled substance.

Overview of the Offenses

b. From early 2012 through September 30, 2015, JOEL PASTERNAK created and directed a drug trafficking organization which specialized in the importation, manufacture, and distribution of anabolic steroids. Members of the conspiracy obtained raw steroid products from overseas suppliers, particularly sources in the Peoples Republic of China. The raw steroid products were ordered by or at the direction of JOEL PASTERNAK to others, using false names and were delivered to locations via the United States Postal Service. JOEL PASTERNAK caused the shipments to be paid by international wire transfers using false remitter information. The labeling on the raw steroid products was misleading and designed to conceal the nature of the contraband illegally shipped to the United States.

c. Product Receivers, acting at the direction of JOEL PASTERNAK, unpackaged and then repackaged the raw steroid products and shipped them to others involved in the conspiracy,

who also used false names. Lab Workers then converted the raw steroid product into consumer use products in liquid, tablet, and powder form. Lab Workers worked at a series of clandestine laboratories located in residential neighborhoods: 1322 Baldridge Drive in Johnson City, Tennessee; 2305 S. Greenwood Drive #24 in Johnson City, Tennessee; 1049 Ingleside Terrace in Johnson City, Tennessee; 1812 E. Millard St. in Johnson City, Tennessee, and 680 Mayberry Road in Jonesborough, Tennessee.

d. Lab Workers combined raw steroid products with additives and mixing agents, prepared individual dosage units, packaged the final products, and shipped the final products as directed by the defendant. JOEL PASTERNAK directed others who procured the equipment and supplies needed to convert the raw steroid products to consumer products, as well as packaging and dosage materials and equipment. JOEL PASTERNAK directed others who purchased glass ware, vials, marketing labels, and shipping supplies from various sources throughout the United States.

e. JOEL PASTERNAK'S drug trafficking organization relied heavily on sales made through a series of internet-based websites. JOEL PASTERNAK controlled access to these websites through a series of questions designed to screen out residents of Tennessee and law enforcement officers. Once a purchaser gained access, s/he viewed the steroid products available and placed an order online, using the internet, a means of interstate commerce. JOEL PASTERNAK accepted payment through money orders, wire transfers, and Bitcoin, an electronic currency. Once JOEL PASTERNAK received payment from a consumer, he directed others to ship finished products to the consumer using the United States Postal Service.

f. As part of the drug trafficking scheme, Joel Pasternak and others laundered money in order to conceal the sources of the funds and its connection to illegal drug sales. JOEL PASTERNAK, through his co-conspirators and others, directed consumers' purchase funds to one of

3

many Money Receivers located throughout the United States and in foreign countries. The funds were usually directed to a Western Union MoneyGram account placed in a fictitious name in another state. For example, hundreds of thousands of dollars were shipped to more than five different false identities in Detroit, Michigan. A co-conspirator appeared at a Western Union outlet in Detroit and received the transfer of funds in cash or immediately converted the transfer to cash. He then withdrew his commission (typically 10%) and shipped the remaining cash to other Money Receivers designated by JOEL PASTERNAK, using the United States Postal Service. The money ultimately was sent to the custody and control of JOEL PASTERNAK. The purposes of the money laundering endeavors were to monetize the gains from the illegal drug sales, conceal the illegal drug sales and its profit from law enforcement authorities, and to facilitate the illegal drug sales.

<u>Defendant's Role In the Offense</u>

    g. Kari Carter was a Lab Worker for the illegal steroids business. She worked at two clandestine steroids labs operated by Joel Pasternak located at 680 Mayberry Road in Jonesborough, Tennessee and 1812 E. Millard Street in Johnson City, Tennessee. At the labs, the defendant packaged and bottled finished products containing raw steroid powders, mixing agents, and additives for shipment. In addition, the defendant placed glassware utilized in the process in an autoclave for sterilization.

    h. The defendant admits that she knowingly conspired to manufacture, distribute, and possess with intent to distribute, anabolic steroids, a Schedule III controlled substance. She knowingly and intentionally joined the conspiracy and she actively participated in the conspiracy.

    5. The defendant is pleading guilty because the defendant is in fact guilty. The defendant understands that, by pleading guilty, the defendant is giving up several rights, including:

a) the right to plead not guilty;

b) the right to a speedy and public trial by jury;

c) the right to assistance of counsel at trial;

d) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

e) the right to confront and cross-examine witnesses against the defendant;

f) the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and

g) the right not to testify and to have that choice not used against the defendant.

6. Pursuant to Fed. Rule Crim. Pro. 11c1C, the defendant and the United States agree as follows:

a) The defendant and the United States agree to the following terms for purposes of calculating the defendant's Advisory Guideline Range under the United States Sentencing Guidelines. In the event the Court declines to accept the parties' stipulated terms, the defendant will have the right to withdraw her guilty plea.:

As Regards Count One:

1) The defendant is held accountable for the equivalent of 19.99 kilograms of marijuana for purposes of U.S.S.G. § 2D1.1(c)(10), yielding a Base Offense Level of 14.

2) The defendant, or a person for whose conduct she is accountable under U.S.S.G. § 2D1.1(b)(7), distributed a controlled substance through mass marketing by means of an interactive computer service, yielding a two-level sentencing enhancement.

7. The parties agree that the appropriate disposition of this case would be the following as to each count:

5

a) The Court may impose any lawful term of imprisonment, any lawful fine, and any lawful term of supervised release up to the statutory maximum;

b) The Court will impose special assessment fees as required by law; and

c) The Court may order forfeiture as applicable and restitution as appropriate.

No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court, and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea. The defendant understands that the sentence in this case will be determined by the Court after it receives the presentence investigation report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

8. Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offenses, including violations of conditions of release or the commission of any additional offenses prior to sentencing, the United States will be free to decline to make such

motion, to withdraw that motion if already made, and to recommend to the Court that the defendant not receive any reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

9. The defendant agrees to pay the special assessments in this case prior to sentencing.

10. Unless otherwise limited by an agreed preliminary order of forfeiture, the defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, which are in the possession or control of the defendant or the defendant's nominees that were used and intended to be used in any manner or part to commit and to facilitate the commission of a violation of Title 21, United States Code, Sections 846 and/or 841, and/or any and all assets and property, or portions thereof, subject to forfeiture as proceeds of the defendant's criminal activities which are in the possession or control of the defendant or the defendant's nominees. The defendant also agrees to forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property in violation of Title 18, United States Code, Section 1956(h), including but not limited to a money judgment in the amount of $10,000, which represents the proceeds of the sale of anabolic steroids, a Schedule III controlled substance for which the defendant shall be liable.

The defendant further agrees to assist the United States fully in the identification, recovery, and return to the United States of any other assets or portions thereof subject to forfeiture. The defendant further agrees to make a full and complete disclosure of all assets over which the defendant exercises control and those which are held or controlled by a nominee. The defendant agrees to forfeit all interests in the property as described above and to take whatever steps are necessary to pass clear title to the United States. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and the signing of any other

documents necessary to effectuate such transfers. The defendant agrees not to object to any administrative, civil or criminal forfeiture brought against these properties. The defendant agrees to take all such steps to locate such property and to pass title to the United States before the defendant's sentencing.

11. Financial Obligations. The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

a) If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs.

8

The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

b) The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

c) If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's Office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

12. The defendant acknowledges that the principal benefits to the United States of a plea agreement include the conservation of limited government resources and bringing a certain end to the case. Accordingly, in consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offenses committed, the defendant voluntarily, knowingly, and intentionally agrees to the following:

a) The defendant will not file a direct appeal of the defendant's convictions or sentence with one exception: The defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater. The defendant also waives the right to appeal the Court's determination as to whether the defendant's sentence will be consecutive or partially concurrent to any other sentence.

b) The defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction or sentence, with two exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

9

c) The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

13. This plea agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this plea agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this plea agreement in any way (including but not limited to failing to enter guilty plea as agreed herein, moving to withdraw guilty plea after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea in this case.

14. The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though there may or may not be any additional terms. If additional terms are included in the supplement, they are hereby fully incorporated herein.

15. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charges, and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

NANCY STALLARD HARR
UNITED STATES ATTORNEY

5-1-2017
Date

By: *Helen Smith*
Helen C.T. Smith
Assistant United States Attorney

4-29-17
Date

KARI CARTER
Defendant

4-29-17
Date

Attorney for the Defendant

11