IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE, AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Action No.: **2:16-CR-115-07** |
| | ) | |
| KARI CARTER | ) | |

## SENTENCING MEMORANDUM

Probation has calculated a total offense level of 17, calling for a range of punishment of 24 to 30 months of imprisonment. In calculating the offense level, probation applied three different offense characteristics, which collectively add six levels to her base offense level of 14. The plea agreement provided for Ms. Carter's acquiescence that USSG 2D1.1(b)(7) (distribution through mass marketing as relevant conduct) applied to her conduct.

The defendant has objected to application of USSG 2D1.1(b)1 (possession of a dangerous weapon) and USSG 2D1.1(b)12 (maintaining a premises for purpose of manufacturing).

## USSG 2D1.1(b) 12

At paragraph 41 of the PSR, probation assigns a two-level increase to the guideline offense level for maintenance by defendant of a premises for the purpose of manufacturing or distributing a controlled substance at 300 Castlewood Court, Johnson City, with specific reference to Part A (paragraph 16) of the report. Paragraph 16 recites correctly from relevant language in the plea

agreement as follows:

> "Kari Carter was a Lab Worker for the illegal steroids business. She worked at two clandestine steroids labs operated by Joel Pasternak located at 680 Mayberry Road in Jonesborough, Tennessee and 1812 E. Millard Street in Johnson City, Tennessee. At the labs, the defendant packaged and bottled finished products containing raw steroid powders, mixing agents, and additives for shipment. In addition, the defendant placed glassware utilized in the process in an autoclave for sterilization."

Defendant lived periodically at 300 Castlewood Court, Johnson City. To her knowledge, no controlled substances were distributed from this location and she did not maintain this premises. This enhancement should not be applied.

### USSG 2D1.1(b)1

Under circumstances where the government cannot prove possession of a firearm by the defendant, the possession of a firearm by a coconspirator must (1) be connected to the conspiracy and (2) be reasonably foreseeable. USSG § 1B1.3(b)(1)(B); *United States v. Cochran*, 14 F.3d 1128, 1132 (6th Cir. 1994). Presence alone of a weapon at the site of drug manufacturing is not enough to either automatically connect it to the offense or to create a presumption that the weapon is attributable to the defendant. USSG § 2D1.1, comment. *U.S. v Woods, 604 F.3rd 286* (6th Cir. 2011). When possession by a co-defendant is established, combined with proof of its connection to the offense, the government must additionally prove that the defendant reasonably expected a firearm to be possessed. The Sixth Circuit has specifically rejected 'the fiction that a firearm's

2

presence always will be foreseeable to persons participating in illegal drug transactions.'" *United States v. Catalan*, 499 F.3d 604, 607 (6th Cir. 2007)

This court should reject the weapons enhancement unless the government can prove that Ms. Carter knew or reasonably calculated the presence of firearms and that their existence were "in connection to" the drug offense. Note should be taken that the PSR mentions a four-plant marijuana grow operation in a separate basement room in a house not belonging to the defendant, but it does not appear certain that this "operation" is the drug conspiracy probation is connecting to the firearms enhancement.

In the event the court applies this enhancement, defendant asserts that her lack of any personal connection with the firearms or actual or constructive possession thereof should mitigate what would be the harsh application of a two-level increase in her guideline range. Although potentially applicable, the court may temper the harsh effects of any provision of the guidelines where a strict application thereof may lead to an overly harsh and unjust result. This can be accomplished by either a departure from the specific guideline or by variance, or both. She is not the intended target of this enhancement.

In this case, Ms. Carter was never in physical possession of a firearm associated with a drug trafficking operation. Defendant asserts that no manufacturing occurred at this residence, unless probation is alleging that the co-defendant's marijuana grow was the offending conduct and not the charged conduct. The existence of the firearm being connected to the offense conduct is

3

tenuous. Mere presence on the scene plus association with illegal possessors is not enough'" *United States v. Birmley*, 529 F.2d 103, 107 (6th Cir. 1976).

To clarify, this defendant asserts that the two-level weapons enhancement should not be applied to her because she did not know of the existence of any firearms, did not own or possess or have physical control over the firearms and that the firearms were not connected to the charged offense conduct. In the event the Court finds that the firearms are connected to the offense, then it is the defendant's position that it was, "clearly improbable that the weapon was connected to the offence." USSG 2D1.1, comment n. 3. The government is not relieved of its burden of proof under USSG § 2D1.1(b) simply because defendant is involved in the drug trade. *U.S. v Woods*, 604 F.3rd 286 (6th Cir. 2011).

In the event the Court finds that the weapons enhancement applies to defendant, defendant's position is that her conduct with reference to the firearms falls outside the heartland of cases this enhancement was intended to address, is excessive and warrants a downward departure. In addition, pursuant to all relevant 3553(a) factors, application of the two-level increase in her guideline range would be excessive and could result in a sentence greater than necessary to fulfill the goals of sentencing. The ill sought to avoid is violence and this defendant has shown no proclivities toward violence. Therefore, the court should grant a variance from the harsh effects of this guideline enhancement and figure such variance into the overall sentence.

### 3553(a) Discussion

In federal criminal sentencing, the court must make, "an individualized assessment based on the facts presented," It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes **mitigate**, sometimes magnify, the crime and the punishment to ensue. *Koon* v. *United States*, 518 U.S. 81, 98, 116 S. Ct. 2035, 135 L. Ed. 2d 392 (1996). *Gall v. United States,* 128 S. Ct. 586 (U.S. Dec. 10, 2007).

Ms. Carter is a bit of a study in human frailty and immaturity. Although Ms. Carter voluntarily engaged in the illegal conduct outlined in her plea agreement, she did so under circumstances that do not suggest a sustained intent on her part to commit additional violations of the law. Her actions suggest a young woman becoming involved emotionally with a far more experienced man and being seamlessly swept up in a criminal enterprise as a consequence. There is no suggestion that she was powerless to walk away, but certainly she was heavily influenced by the charms of Mr. Hensley. She considered him as her protector and a man who would no nothing to harm her. She was obviously wrong.

A lack of maturity and an undeveloped sense of responsibility are qualities that "often result in impetuous and ill-considered actions." *Roper* v. *Simmons,* 543 U.S. 551, 569, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), quoting the District Judge:

5

> "Immaturity at the time of the offense conduct is not an inconsequential consideration. Recent studies on the development of the human brain conclude that human brain development may not become complete until the age of twenty-five. . . . [T]he recent [National Institutes of Health] report confirms that there is no bold line demarcating at what age a person reaches full maturity. While age does not excuse behavior, a sentencing court should account for age when inquiring into the conduct of a defendant." App. 123, n 2. *Gall v. United States*, <u>128 S. Ct. 586 (U.S. Dec. 10, 2007)</u>".

Throughout the conspiracy, defendant did not occupy a position of management or oversight. She was basically the lowest level worker possible in this enterprise. Her work was packaging materials for shipping. The work did not involve sophistication or knowledge beyond basic skills. Ms. Carter did not possess knowledge with respect to the internal operation or scope of the conspiracy. She applied no discretion to her work and she exhibited no desire or ambition with respect to enhancing or expanding the operation.

During the period of the conspiracy the defendant worked a regular job and performed well with enormously difficult coursework in chemistry. She has demonstrated qualities of discipline and determination. Her goals exceeded those of the criminal behavior she engaged in. She clearly engaged in cognitive dissonance regarding the consequence of her actions, but she has learned from the experience. Unfortunately Ms. Carter will carry a felony record through life as the government declined her application for diversion. This fact alone will bring her a constant reminder of the seriousness of her actions and will deter any future irresponsibility.

6

Section 3553(a)(6) requires judges to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Given the harsh effect of the sentencing enhancements discussed above, the totality of the circumstances of the offense, the personal characteristics of this defendant and the need to avoid unwarranted sentence disparity, the court should vary from whatever advisory guideline ultimately is settled upon and place Ms. Carter on probation. To do so will in no way depreciate the seriousness of the offense and a non-incarceration sentence is the best choice to address the correction necessary for this woman to live a productive life.

Respectfully Submitted,

s/*Donald E. Spurrell*
Donald E. Spurrell, BPR# 012810
128 East Market Street
Johnson City, TN 37604
Telephone: (423) 926-9421
Facsimile: (888) 526-1020
Email: donspurrell@mac.com

CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of September 2017, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

Respectfully Submitted,

s/*Donald E. Spurrell*